HENRY O. WING v. J. J. MILLER.

EVIDENCE *Sustains Judgment.* The evidence in this case examined, and *held* to be sufficient to sustain the verdict and judgment rendered in the court below.

*Error from Dickinson District Court.*

THIS was an action of replevin, brought in the district court of Dickinson county by *Henry O. Wing* against *J. J. Miller*, to recover certain goods, wares and merchandise which had previously been seized as the property of the Wall Brothers, by Miller as sheriff of Dickinson county, under various orders of attachment issued in suits brought by various creditors of the Wall Brothers. It is admitted that the goods were at one time the property of the Wall Brothers, but the plaintiff claims that prior to the levy of the orders of attachment upon them, he honestly and in good faith purchased the same from the Wall Brothers; while the defendant claims that the plaintiff made the purchase with the intention of assisting the Wall Brothers in hindering, delaying and defrauding their creditors. At the February term, 1886, the case was tried before the court and a jury, and the jury made the following special findings of fact, and rendered the following verdict, to wit:

"SPECIAL FINDINGS OF FACT.

"*Ques.* 1. Did the sale of the stock of goods in controversy in this case made by Wall Brothers to the plaintiff Wing, at the time and under the circumstances, necessarily have the effect to hinder or delay, or defraud the creditors of Wall Brothers? *Ans.:* Yes.

"Q. 2. Did the sale of the stock of goods in controversy in this case made by Wall Brothers to the plaintiff, Wing, at the trial and under the circumstances necessarily have the effect to *hinder* or delay the creditors of Wall Brothers in the collection of their claims? A. Yes.

"Q. 3. What if any inquiry did the plaintiff, Wing, make at or before the transfer of the stock of goods in controversy in this suit to him by Wall Brothers, to ascertain what if any amount Wall Brothers were owing? A. None.

"Q. 4. What if any amount did Wall Brothers owe on account of the purchase of goods at the time of the transfer of the stock of goods in controversy in this suit to the plaintiff, Wing?    A. Between seven and nine thousand dollars.

"Q. 5. Was the transfer of the goods from Wall Brothers to Wing made in undue haste?    A. Yes.

"Q. 6. Did the plaintiff, Wing, inquire of Wall Brothers or either of them, or of any other person whether Wall Brothers were financially embarrassed or largely indebted to their creditors before he bought the stock of goods?    A. No."

### "VERDICT.

"We, the jury, duly impaneled and sworn in the above cause of action, do upon our oaths find for the defendant that at the commencement of this suit the defendant was entitled to the possession of the property in controversy, and that the value of said goods was $5,735."

The court below rendered judgment in favor of the defendant and against the plaintiff for the recovery of the goods and for costs; and the plaintiff, as plaintiff in error, brings the case to this court for review.

*J. G. Mohler, Burton & Moore,* and *Rossington, Smith & Dallas,* for plaintiff in error.

*John H. Mahan,* for defendant in error.

The opinion of the court was delivered by

VALENTINE, J.: It is a settled fact in this case that the Wall Brothers sold the goods in controversy to the plaintiff Wing for the purpose of hindering, delaying, and defrauding their creditors, and the only question now presented of any importance is, whether Wing had notice of such intention when he purchased the goods; or to state the question more accurately as it is presented to this court, it is whether the evidence introduced on the trial in the court below is sufficient to uphold the verdict of the jury, which in effect established the fact that Wing had notice of such intention, or at least that he had knowledge of such facts as would put him on inquiry. It appears from the evidence that Wing resided at Delphos, in Ottawa county, and that the Wall Brothers,

(Philip M. Wall, James Wall, and Michael Wall,) resided and did business at Solomon City, in Dickinson county. Nathaniel Wall, the father of the Wall Brothers, and Thomas Donigan, a brother-in-law of the Wall Brothers, resided at Delphos, and were near neighbors of Wing. Wing had no property, except, as he states, $7,000 in currency, which he kept, as he states, at his house and not in any bank; indeed, he states that he never had any money in a bank. He also owed a number of debts. He says he brought this money from Colorado about four months before, but how he got the same is not satisfactorily explained. He had no business except that he was the agent of his wife in operating a livery stable at Delphos, which belonged to his wife and Mrs. Alice McDonough, the wife of Joseph McDonough. He never had been a merchant, and had no knowledge of merchandise. He was also illiterate, and could not read or write. The Wall Brothers were hopelessly insolvent, and intended to dispose of their stock of goods in a manner to hinder, delay, and defraud their creditors. On Thursday, January 8, 1885, Michael Wall, a member of the firm of Wall Brothers, proposed to Wing at Delphos to sell to Wing the stock of goods, and this for the reason, as Wing states, that Michael Wall said that he and his brothers did not get along well together. On that same evening, Wing and Michael Wall started to Solomon City for the purpose of accomplishing the intended transfer of the goods. J. J. Murphy, a clerk in the store at Delphos of Thomas Donigan, a brother-in-law of the Wall Brothers, went with Wing as Wing's agent, and for the purpose of representing Wing. It does not appear that Wing and Murphy had ever before had any particular or intimate acquaintance. It was at first considered that Wing should purchase the stock of goods in the lump, but afterward, it was concluded to take an inventory of the goods, and on Friday, January 9, at about 11 o'clock in the morning, the parties commenced to take such inventory. Wing was represented by Murphy, and the Wall Brothers acted for themselves, and

33 — 40 KAS.

were assisted by their clerks, Mr. Winters and Mr. Morse, and by Ed. Wall, a brother of the Wall Brothers, who resided at Kansas City. In the afternoon of that day, Wing and Michael Wall went back to Delphos, and Murphy and the others continued to make out the inventory. On that day, Wing says he paid to the Wall Brothers $500. On the next day, which was Saturday, January 10, at 7 o'clock in the morning, Murphy left Solomon City and returned to Delphos. He brought some figures with him, and told Wing he had got a good bargain. In the evening of the same day, and at about 8 o'clock, Wing went back to Solomon City, and at about 11 o'clock P. M. he then and there received an inventory of the goods, made out in the handwriting of the following persons, to wit: Murphy, James Wall, Ed. Wall, Mr. Winters, and Mr. Morse; and Wing then paid to the Wall Brothers, as he states, $3,500 more in currency, making his payments up to that time aggregate $4,000, and he received the possession of the goods, and the key to the building in which they were situated. On the Monday following, which was January 12, 1885, he received the deed for the store building and the lot on which it was situated, which he also and at the same time and as a part of the same transaction purchased, and, as he states, he paid $3,000 more in currency, making a total of $7,000, as he states paid by him for all the property. The goods were valued at $6,000, and the building and lot, over and above a mortgage on it, were valued at $1,000. That was probably a fair price for the property. Neither Wing nor Murphy ever inquired, as they state, whether the Wall Brothers were in debt or not. They did not ask to see their books, nor their invoice bills, nor anything else which might inform them concerning, or aid them in any manner in ascertaining, what the financial condition of the firm of Wall Brothers was; nor did they ask for an abstract of the title to the real estate; nor did they examine or have any one examine for them to ascertain what the condition of the title to the real estate was. They took the statement of the Wall Brothers. Wing says he did ask Donigan, the brother-in-law of the Wall

Brothers, if they were "all right," and he said they were. He says he also asked their father; and about Saturday, pending the negotiations, he says he also asked a farmer, at Delphos, if they were honest in their dealings. He did not however ask any person about their debts, or their financial condition. On Tuesday, January 13, 1885, the defendant in this case, as sheriff of Dickinson county, attached the goods and took them into his possession, and on February 24, 1885, the plaintiff Wing commenced this action of replevin to recover them.

It must be admitted that the evidence in this case is weak to sustain the verdict and judgment rendered in the court below. But the court and jury in that court saw the parties and the witnesses, and heard them all testify, and therefore had a much better opportunity than we have of determining the credibility of the witnesses, how much of their testimony should be believed, and how much should be disbelieved, and what their testimony, so far as it was credible, proved, and what it disproved. The court and jury saw Wing and Murphy and the three Wall Brothers, and heard them all testify. Wing, it is true, testified that he had no knowledge that the Wall Brothers had any intention of hindering, delaying or defrauding their creditors, and that he acted innocently and honestly in purchasing the goods, and that he paid his money for them in good faith; but to this extent it is evident that neither the court nor the jury believed him. Evidently the court and jury believed that he did know that the Wall Brothers sold and transferred their goods for the purpose of hindering, delaying and defrauding their creditors; or at least that he had sufficient knowledge of the facts to put him upon inquiry, and it is also probable that neither the court nor the jury believed that Wing paid any considerable sum of money for the goods. It is very probable that the court and jury believed that he merely took the possession of the goods on Saturday night before he got the deed for the building in which the goods were kept, before he paid all the money for the goods, indeed before the transaction between the parties was completed, merely for the purpose of placing the goods beyond the reach

of the creditors of the Wall Brothers. Some of the creditors of the Wall Brothers were then urging a settlement of their accounts, and he may have known it. Taking the entire evidence in this case, we cannot say that the court below and the jury erred in finding that Wing had such a guilty knowledge of the fraudulent intention of the Wall Brothers in transferring the goods in controversy to Wing, that such transfer must be considered void as against the creditors of the Wall Brothers. Indeed, in all probability, the verdict and judgment rendered in the court below are correct.

*Evidence sustains judgment.*

There are no other questions which need discussion.

The judgment of the court below will be affirmed.

All the Justices concurring.